UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOFAN AHMADZAI,<br><br>                         Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, TODD BLANCHE, Acting Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, JEREMY CASEY, Warden of Imperial Regional Detention Facility,<br><br>                         Respondents. | Case No.:  26-CV-2641 JAO (MSB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Tofan Ahmadzai's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1).  Also before the Court are Respondents Markwayne Mullins' (Secretary of the Department of Homeland Security), Todd Blanche's (Acting Attorney General), Todd M. Lyon's (Acting Director, Immigration and Customs Enforcement ("ICE")), Jesus Rocha's (Acting Field Office Director, San Diego Field Office), and Jeremy Casey's (Warden of Imperial Regional Detention Facility) Return in opposition to the Petition (ECF No. 4), and Petitioner's

Traverse (ECF No. 5). For the reasons set forth below, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner was born in Afghanistan and traveled to the United States in June 2025. *See* ECF No. 1 at 20 ¶ 1. He entered the country near Tecate, California, was apprehended and detained on the night of June 5, 2025, and placed into expedited removal proceedings. *See id.* ¶ 2; *see also* ECF No. 4-2 ¶¶ 6, 7. Petitioner requested asylum, *see* ECF No. 1 at 20 ¶ 2, but an Immigration Judge denied the claim on November 10, 2025, rendering Petitioner's expedited order of removal to Afghanistan administratively final, *see id.* ¶ 3; ECF No. 4-2 ¶ 15. Since then, an ICE agent has only spoken to Petitioner once and did not discuss travel documents to Afghanistan or any other country. *See* ECF No. 1 at 20 ¶ 4.

Even though ICE possesses Petitioner's unexpired passport issued by the Afghanistan Taliban, removal to Afghanistan is not straightforward as the United States lacks formal diplomatic relations with the Afghanistan Taliban. *See* ECF No. 4-2 ¶¶ 16–17. Instead, before the Taliban will accept an Afghan citizen for repatriation on a commercial flight, the United States must first apply for, and obtain, a travel authorization letter from the Afghan Taliban's consulate in Doha, Qatar. *See* ECF No. 4-2 ¶ 17. ICE[1] began this process in December 2025 and by January 15, 2026, had sent the request to the Afghanistan Taliban's Doha consulate. *See id.* ¶¶ 18–19. As of March 16, and May 5, the Taliban had not taken any action on the request. *See id.* ¶¶ 20–21.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole

---

[1] More precisely, "ICE's ERO Removal and International Operations Division Headquarters in Washington, D.C. (HQRIO)." *See* ECF No. 4-2 ¶ 18.

26-CV-2641 JAO (MSB)

judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION[2]

Petitioner claims that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231 because his removal is unlikely in the reasonably foreseeable future. *See* ECF No. 1 at 7–13. Petitioner also argues that if Respondents cannot remove him to Afghanistan, they may attempt to remove him to a third country, but that if they do so under current policy, it would violate the Fifth Amendment, the Convention Against Torture, and implementing regulations. *See id.* at 13–16. The Court addresses each in turn.

**A.     Petitioner's Detention and *Zadvydas***

When a final order of removal is entered against a noncitizen, the noncitizen must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal

---

[2] Respondents argue that the Court lacks jurisdiction over the Petition to the extent it represents a challenge to ICE's decision to detain Petitioner for the purpose of removal *See* ECF No. 4 at 5 (citing 8 U.S.C. § 1252(g). But the Petition clearly challenges the *continued* detention of Petitioner despite the unlikelihood of his removal and falls squarely within the Court's jurisdiction. *See Zadvydas*, 533 U.S. at 687–88; *Muradyan v. Warden, Otay Mesa Detention Ctr.*, 2026 WL 184206, at *1 (S.D. Cal. Jan. 23, 2026). It also attacks ICE's third country notice policy, which is a "purely legal question that does not challenge the Attorney General's discretionary authority," to execute Petitioner's potential removal. *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (internal quotations and citation omitted) (rejecting government's jurisdictional challenge when the plaintiff raised lack of notice regarding third country removal to Mexico).

26-CV-2641 JAO (MSB)

period." *Id.* § 1231(a)(1)(A).  After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.  A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701.  After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  If a petitioner satisfies her initial burden, it then shifts to the government to rebut that showing.  *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.  In that case, the alien's release may be conditioned on any of the various forms of conditioned release.  *Id.* at 700.

"[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

Section 1231(a)(1)(B) states that:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The Court finds that Petitioner has satisfied his initial burden.[3]  Petitioner has been detained for just over six months since his November 10, 2025 order of removal and argues that Respondents will not be able to remove him to Afghanistan because only one ICE agent has briefly discussed the matter with him and given him no indication that Afghanistan has accepted Petitioner for return.  *See* ECF No. 1 at 3.  Further, Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan.  *See id.* at 4.  More fundamentally, Petitioner posits that it is unlikely the Taliban is accepting return of Afghan nationals from the United States.  *See id.*; *see also Samir v. Wolf*, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026); *Yunsai v. Bondi*, 2026 WL 895627, at *2–3 (W.D. Tex. Mar. 30, 2026); *Jalili v. Semaia*, 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026); *Rahimi v. Semaia*, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026).  Because Petitioner has shown good reason to believe he will not be removed in the reasonably foreseeable future, the burden now shifts to Respondents to rebut Petitioner's showing.  *Zadvydas*, 533 at 701.

Respondents argue that even if Petitioner has met his burden, they have "affirmatively shown that there is a significant likelihood of Petitioner's removal to Afghanistan in the reasonably foreseeable future" because ICE has Petitioner's passport and has requested authorization from the Taliban for permission to fly Petitioner back to Afghanistan on a commercial flight.  *See* ECF No. 4 at 5.  But all Respondents have demonstrated is that they sent one letter to Doha, Qatar sometime around five months ago and have since heard nothing from the Taliban.  *See* ECF No. 4-2 ¶¶ 18–21.  Moreover, Respondents don't contest Petitioner's assertion—and the cases in support—that Afghanistan is not accepting return of its nationals.  *See generally* ECF No. 4.  Finally, Respondents have failed to provide any evidence that they are reasonably likely—or even

---

[3] Respondents argue that Petitioner's case is premature because the presumptively reasonable detention period did not end until May 10, 2026.  *See* ECF No. 4 at 4.  But as that date has now passed, Petitioner's detention is no longer presumptively reasonable.

26-CV-2641 JAO (MSB)

attempting—to remove Petitioner to a third country.  The Court thus finds that Respondents have failed to satisfy their burden.

**B.      Third-Country Removal**

Petitioner argues that if Respondents fail to remove him to Afghanistan, they may attempt to remove him to a third country, and if they do so, it would be under a notice policy that violates the Fifth Amendment, the Convention Against Torture, and implementing regulations.  *See* ECF No. 1 at.  But Respondents have not indicated that they are even attempting to remove Petitioner to a third country at this time, and Petitioner recognizes it would be unexpected.  *See* ECF No. 5 at 7. Thus, while the Court finds persuasive those other courts that have determined that ICE's policies[4] regarding notice before removal to a third country violate Ninth Circuit precedent and due process, *see Azzo v. Noem*, 2025 WL 3535208, at *6–8 (S.D. Cal. Dec. 10, 2025), the Court considers the issue premature on the current record, *see Yao v. Noem*, 2026 WL 914241, at * 1 (S.D. Cal. Apr. 3, 2026).

Accordingly, the Court **GRANTS IN PART** the Amended Petition.

<strong>CONCLUSION</strong>

Based on the foregoing, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody, subject to supervision under regulations prescribed by the Attorney General, including the requirements of 8 U.S.C. § 1231(a)(3).  Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.  The Court **DENIES without prejudice** Petitioner's request for injunctive relief regarding the potential process for removal to a third country.  *See* ECF No. 1 at 16–17.

---

[4]  Petitioner includes a memo regarding ICE's policies as part of the Petition.  *See* ECF No. 1 at 23–24.

26-CV-2641 JAO (MSB)

The Parties are **ORDERED** to file a Joint Status Report by <u>May 20, 2026</u>, confirming that Petitioner has been released.  As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

     **IT IS SO ORDERED.**

Dated:  May 13, 2026



Jill A. Otake
United States District Judge

26-CV-2641 JAO (MSB)